UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAWN MARTIN

     Applicant,

v.                               CASE NO. 8:13-cv-1860-T-23TGW

SECRETARY, Florida Department of
Corrections,

     Respondent.

_____/

**O R D E R**

Shawn Martin ("Martin") applies under 28 U.S.C. § 2254 for the writ of habeas corpus and challenges a probation revocation judgment from the Thirteenth Judicial Circuit for Hillsborough County, Florida. Martin's application alleges that counsel rendered ineffective assistance. (Doc. 1) In support of the response, the respondent Secretary of the Florida Department of Corrections provides as an appendix the record of Martin's state court proceedings. (Docs. 5 and 7) The respondent admits the application's timeliness. (Response at 4, Doc. 5) The respondent thoroughly analyses the claims and, notwithstanding Martin's reply (Doc. 11), the application for the writ of habeas corpus lacks merit.

**BACKGROUND**

On June 24, 2004, Martin pleaded guilty to four counts of lewd or lascivious battery on a child under sixteen (counts one through four), procuring a person under

sixteen for prostitution (count six), possession of photographs depicting sex with a child (count seven), promotion of a sexual performance by a child (count eight), and thirteen counts of possession of child pornography (counts nine through twenty-one). (Doc. 7, Respondent's Exhibit 1 at 77–109).[1]  Martin was sentenced to (1) four years of imprisonment on one of the counts of lewd battery on a child under sixteen; (2) ten years of sex-offender probation on (a) his remaining three counts of lewd battery, (b) his procuring of a person under sixteen for prostitution, (c) his possession of photographs depicting sex with a child, and (d) his promotion of a sexual performance by a child; and (3) five years of sex-offender probation on his thirteen counts of possession of child pornography.  Shortly after his release from prison, Martin was charged with violating the terms of his supervision.  (Exhibit 1 at 120–59)  After admitting to violating probation, the state court revoked Martin's probation and sentenced him to imprisonment for thirty-five years.

Martin moved to mitigate his sentence or to withdraw his admission to violating his probation, which motion was denied after a hearing.  (Exhibit 1 at 161–163)  Martin appealed the probation revocation judgment, which the Second District Court of Appeal *per curiam* affirmed without a written decision.  *Martin v. State*, 954 So. 2d 34 (2nd DCA 2007) (table).

Martin moved for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, in which motion he attacked the probation revocation

---

[1]  Each exhibit cited in this order appears in the respondent's appendix. (Doc. 7)

judgment.  (Respondent's Exhibit 6)  After the motion was dismissed as facially

insufficient (Respondent's Exhibit 7), Martin amended his Rule 3.850 motion to

assert the claim alleged in his federal application, specifically, that his retained

counsel in his probation revocation proceeding rendered ineffective assistance (1) by

not informing him that the state was required to prove the alleged violations of

probation were both willful and substantial and (2) by not investigating potential

defenses to the violation charges.  (Respondent's Exhibit 8)  After conducting an

evidentiary hearing, the post-conviction court denied the claim (Respondent's

Exhibit 10), which decision was *per curiam* affirmed without a written decision.

*Martin v. State*, 111 So. 3d 889 (2nd DCA 2013) (table).

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or

- 3 -

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a
federal habeas court to grant a state prisoner's application for a
writ of habeas corpus with respect to claims adjudicated on the
merits in state court.  Under § 2254(d)(1), the writ may issue only
if one of the following two conditions is satisfied — the state-
court adjudication resulted in a decision that (1) "was contrary to
. . . clearly established Federal Law, as determined by the
Supreme Court of the United States" or (2) "involved an
unreasonable application of . . . clearly established Federal law,
as determined by the Supreme Court of the United States." Under
the "contrary to" clause, a federal habeas court may grant the
writ if the state court arrives at a conclusion opposite to that
reached by this Court on a question of law or if the state court
decides a case differently than this Court has on a set of
materially indistinguishable facts. Under the "unreasonable
application" clause, a federal habeas court may grant the writ if
the state court identifies the correct governing legal principle from
this Court's decisions but unreasonably applies that principle to
the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693  (2002).  "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*,

131 S. Ct. 770, 786–87 (2011).  *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir.

2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the Second District Court of Appeal affirmed the denial of Martin's Rule 3.850 post-conviction. (Respondent's Exhibit 15) The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom*

*Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398.  Martin bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v.*

*Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state court's rejection of Martin's post-conviction claim after conducting an evidentiary hearing warrants deference in this case.  (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 10)

## INEFFECTIVE ASSISTANCE OF COUNSEL

Martin claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Martin must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Martin must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on

investigation." 466 U.S. at 690–91. Martin cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make *reasonable* investigations or make a *reasonable* decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

- 9 -

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Martin must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

The state court conducted an evidentiary hearing and denied the claim of ineffective assistance of counsel, recognizing that *Strickland* governs each claim of

ineffective assistance of counsel.  (Respondent's Exhibit 10)   Therefore, Martin

cannot meet the "contrary to" test in Section 2254(d)(1) and, instead, must show that

the state court unreasonably applied *Strickland* or unreasonably determined the facts.

In determining "reasonableness," a federal application for the writ of habeas corpus

authorizes determining only "whether the state habeas court was objectively

reasonable in its *Strickland* inquiry," not an independent assessment of whether

counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th

Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).  The presumption of correctness and the

highly deferential standard of review requires that the analysis of each claim begin

with the state court's analysis.

## DISCUSSION

Martin claims that his retained counsel in the probation revocation

proceeding rendered ineffective assistance (1) by not informing him that the state

was required to prove the alleged violations of probation were both willful and

substantial and (2) by not investigating potential defenses to the alleged violation.

(Doc. 1 at 14)  Martin's claim, however, is not cognizable in a federal habeas action

because no Sixth Amendment right to counsel exists in a probation revocation

proceeding.  *See Jones v. Wainwright*, 604 F.2d 414, 416 (5th Cir. 1979)[2] ("It should

also be remembered that there is no right to counsel at a probation revocation

---

[2]  Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

hearing, although due process may require that an attorney be appointed in a particular case . . . .") (citing *Gagnon v. Scarpelli*, 411 U.S. 656, 787–91 (1973)).  *See also United States v. Crenshaw*, 140 Fed. App'x 836, 839–40 (11th Cir. 2005) (recognizing that under *Gagnon* the right to counsel under the Sixth Amendment is inapplicable to a revocation proceeding), *cert. denied*, 547 U.S. 1005 (2006).  Although he had a state-created right to counsel at his revocation proceeding, *State v. Hicks*, 478 So. 2d 22, 23–24 (Fla. 1985), Martin's alleged denial of effective counsel under Florida law presents no cognizable claim for federal habeas relief.

Alternatively, Martin shows no entitlement to relief because he fails to meet his burden under Section 2254(d).  The claim, as raised in Martin's amended Rule 3.850 post-conviction motion, was the alleged denial of his right to effective counsel under the Sixth and Fourteenth Amendments and under the Florida constitution. (Respondent's Exhibit 8)  Martin alleged (1) that his counsel failed to inform him that the state was required to prove that the alleged violations were willful and substantial and (2) that, if counsel had properly advised him, he would have proceeded to a contested revocation hearing to demonstrate that the violations were not willful and substantial.  Martin further alleged that his counsel failed to investigate potential witnesses to the alleged violations, and he faulted his counsel for not calling his aunt, his cousin, and his work supervisor to support his underlying contention that the violations were not willful and substantial.  The post-conviction court rejected the claim after conducting an evidentiary hearing.  (Respondent's Exhibit 10 at 4–5.)

At the post-conviction hearing, Martin's defense counsel from the revocation proceeding testified that he discussed with Martin the pros and cons of admitting the violations instead of proceeding to a revocation hearing and risk facing a lengthier sentence if found in violation after a hearing. (Respondent's Exhibit 11 at 84–89, 96–97, and 106) Counsel further testified that he neither threatened or coerced Martin to get him to enter an admission nor promised any particular sentence or said that probation would be reinstated if Martin admitted to the violations. (Respondent's Exhibit 11 at 86–88) Counsel also testified that Martin never denied having committed the violations and never informed counsel of a desire to call witnesses or contest the revocation. According to counsel, Martin and counsel decided as a matter of strategy that Martin's best course of action was to admit the violations and explain the circumstances surrounding the violations. (Respondent's Exhibit 11 at 84–93, 96, 99–100, 104, 106, 108, and 111) The decision to admit the violations was a reasonable strategy under the circumstances.

The respondent correctly asserts that in Florida the standard of proof in a probation revocation proceeding is less stringent than the standard of proof in a criminal proceeding. The state court enjoys broad discretion in determining whether to revoke probation. *See Russell v. State*, 982 So. 2d 642, 646 (Fla. 2008). The state must establish the violation by only the greater weight of the evidence. Determining whether to revoke probation is fact specific because "[t]rial courts must consider each violation on a case-by-case basis for a determination of whether, under the facts and

circumstances, a particular violation is willful and substantial and is supported by the greater weight of the evidence." *Russell*, 982 So. 2d at 646 (citing *State v. Carter*, 835 So. 2d 259, 261 (Fla. 2002)).  Willfulness may be proven by circumstantial evidence. *Hanania v. State*, 855 So. 2d 92, 94 (2nd DCA 2003).

Martin relies on his counsel's testimony at the post-conviction hearing that counsel did not explicitly tell Martin that the State was required to prove that the violations were willful and substantial.  Martin ignores his failure to convince the state courts of his underlying claim that the violations were not willful and substantial.  The Florida trial and appellate courts have answered that underlying state law question by denying relief on Martin's claim of counsel's alleged omission.[3] *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has answered the question of what would have happened had [counsel] objected to the introduction of Callahan's statements . . . . Even if [counsel] . . . did make the objection, it would not have been successful.").  As the respondent correctly argues, Martin cannot show that every reasonably competent attorney would have advised him that his violations were not willful and substantial.

Martin also alleges that counsel was ineffective for not conducting a proper investigation.  Counsel's testimony at the post-conviction hearing established that

---

[3] Although an ineffective-assistance-of-counsel claim is a federal constitutional claim, when the underlying basis for the claim is clearly a question of state law, the Court defers to the state's construction of the state's law. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (deferring to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims") (superseded by statute on other grounds).

- 14 -

Martin neither denied committing the violations nor instructed counsel to call witnesses.  (Respondent's Exhibit 11 at 641).  Counsel advised Martin that contesting the violations risked a severe sentence.  (Respondent's Exhibit 11 at 649)  Under the Sixth Amendment, counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  *See Wiggins v. Smith*, 539 U.S. 510, 525 (2003) (holding that counsel must make an "informed choice" among possible defenses).  The decision whether to investigate must be assessed for reasonableness based on the circumstances, "applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.  Counsel's advice that Martin admit the violations and explain the circumstances surrounding the violations was a strategy that Martin cannot show that no reasonably competent attorney would have pursued.

Martin fails to show that the post-conviction court unreasonably applied *Strickland*, especially the prejudice requirement.  Martin's self-serving assertion that he would have insisted on contesting the alleged violations ignores the strategy that, by admitting the violations, he was in a better position to argue that his acts, although violations, did not warrant the loss of his liberty.  Counsel's testimony at the post-conviction hearing establishes that Martin agreed with that strategy.  (Respondent's Exhibit 11 at 507–08)  Martin fails to demonstrate that there was a reasonable probability that he would have insisted on a contested revocation hearing if counsel had investigated further.

**CONCLUSION**

Martin is imprisoned for thirty-five years, which seems disproportionate to the five-year prison sentence originally imposed.  However, the original sentence was extraordinarily lenient.  Martin pleaded guilty to twenty-one counts of sex crimes involving children.  Under Florida's sentencing laws his minimum possible sentence was imprisonment for more than thirty-three years.  In exchange for his cooperation, the state agreed to a maximum sentence of imprisonment of five years.  Because of his substantial assistance, Martin was sentenced to imprisonment for only four years, followed by probation for ten years.  After the revocation of probation, Martin's present sentence of thirty-five years is near the minimum permissible sentence of thirty-four years and is less than half of the maximum possible sentence of eighty-five years.  In other words, Martin's unwillingness or inability to conform his conduct to the terms of his probation was undoubtedly expensive — but the cost is only the cost he would have paid initially but for a chance to cooperate and the gift of a second chance, now squandered.

The state court record supports the post-conviction court's determination that Martin both understood and agreed that his best chance for not receiving an exceedingly severe sentence was to admit to the violations and argue for a reduced sentence.  The post-conviction court's denial of Martin's motion for post-conviction relief was reasonable.  As a consequence, Martin fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling

Supreme Court precedent or an unreasonable determination of fact.  As *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013), recognizes, an applicant's burden under Section 2254 is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786–787, 178 L. Ed. 2d 624 (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at ___, 131 S. Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at___, 131 S. Ct., at 786 (internal quotation marks omitted).

Accordingly, Martin's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Martin and close this case.

**DENIAL OF BOTH
A CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Martin is not entitled to a certificate of appealability  ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Martin must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C.

§ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Martin is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Martin must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on April 5, 2016.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE